UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

ROBERT RAIA,

        Plaintiff,

    -against-

ILLINOIS TOOL WORKS INC., d/b/a/
HOBART CORPORATION,

        Defendant.
--------------------------------------------------------X

**MEMORANDUM & ORDER**

Civil Action No. 06-4582
(DRH) (MLO)

**Appearances:**

**For the Plaintiff:**
**Frank & Associates, P.C.**
500 Bi-County Blvd, Suite 112N
Farmingdale, New York 11735
By:   Jennifer L. Mazzo, Esq.
        Neil M. Frank, Esq.

**For the Defendant:**
**Bressler, Amery & Ross**
325 Columbia Turnpike
Florham Park, New Jersey 07932
By:   Kirsten McCaw Grossman, Esq.

**HURLEY, Senior District Judge:**

      Plaintiff Robert Raia ("Plaintiff" or "Raia") commenced this action alleging that he was constructively discharged from his position with Defendant Illinois Tool Works ("Defendant" or "ITW") due to the intolerable working conditions to which he was subjected in retaliation for his complaints of discrimination.[1] Presently before the Court is Defendant's motion for summary

---

[1] Plaintiff's complaint is based solely upon the New York State Human Rights Law. The Court's jurisdiction is premised upon diversity of citizenship.

judgment. For the reasons set forth below, the motion is granted.

*Background*

The following facts are taken from the parties' submissions and are undisputed unless noted otherwise.

ITW Food Equipment Corp is headquartered in Ohio and manufactures, distributes, and services commercial food preparation equipment. It is an unincorporated division of Defendant. Plaintiff began working as a field service technician in 1989 for a company that was subsequently purchased by ITW. Plaintiff repairs commercial restaurant equipment working out of ITW's Commack, New York branch. Plaintiff reported to Paul Todoro ("Todoro"), the branch manager, who in turn reported to Don Stairs ("Stairs"), ITW's Regional Manager for Service.

Plaintiff claims he was retaliated against for standing up for Anthony Garnier ("Garnier"), a fellow employee. In 2001 Plaintiff allegedly witnessed discriminatory treatment of Garnier, who is of Haitian descent, and complained to Todoro about it. When the conduct did not cease, Plaintiff attempted to speak to Stairs about "injustices." After three months of trying to contact him, Plaintiff finally spoke to Stairs in March 2002. Stairs allegedly refused to take any action and told Plaintiff not to contact the main office. Shortly after his complaint to Todoro, Plaintiff began to be "harassed," which harassment continued after Garnier's employment terminated in December 2001.

Plaintiff alleges the following acts of retaliation lead to his constructive discharge:

- Plaintiff received poor performance evaluations in November 2001 and March 2002.

- In or about late 2001, Todoro threatened Plaintiff with his job.

2

- In January 2002, Todoro and another employee wedged Raia in his truck and refused to let him move and said: "You know, a job like this you could really get hurt. You're dealing with electricity, with gears. You could really get hurt." "You never know where its going to come from."
- In January 2002, Todoro put Raia on a "Performance Development Program" whereby his performance would be reviewed every two weeks for two months. Under the program, if performance did not meet the standard at the end of two months, an employee could be subject to disciplinary action, up to and including discharge. Raia's performance did improve and he was taken off the program.
- On October 8, 2002, Raia was given a written warning for allegedly refusing to fix a machine that had initially been worked on by another technician. According to Raia, he was told the repair was C.O.D. and the customer was cursing and yelling at him while he was only attempting to follow procedure.
- On November 29, 2002, Raia was given a warning for botching a valve replacement job when in fact he did not replace the valves but called his service advisor who then took five hours to figure how to replace the valves.
- In 2002, Todoro threatened Raia with physical danger when he found Raia working on a machine at a store and yelled at him "What the hell is taking you so long?"
- Todoro called Raia on his cell phone while he was working at a store in 2002 and asked him "What's the matter with you. You're a tech 4, there's no excuse."
- In 2003, Todoro began sending him into dangerous areas and when Raia

3

expressed concern that someone tried to break into his van Todoro responded: "We send you to that area all the time. You see your buddy Tony [Garnier] there? He lives in that hellhole. That's why we send you there all the time and give you those jobs to do." Todoro also chastised Raia because he tried to fix a door lock saying "You ruined it. Now you are going to have to live with it."

- Todoro, through another employee, would regularly check up on Raia's work, although Raia admits he has no evidence that Todoro did not check up on other people.

- In December 2003, Todoro refused to provide Raia with a ladder for his work and further refused to give Raia a purchase order to purchase one telling him instead to lay out the money to buy one and then get reimbursed. Raia was injured as a result.

- In September 2004, upon Raia's return from a medical leave, Todoro told Raia his truck was dirty and he had a half-hour to straighten it out before he went on a call. Because bins were turned over and tool boxes thrown around, Raia asked for an inventory of all items and that an investigation to be conducted as Raia was responsible for the items. Todoro refused both requests.

- In 2004, Todoro and Raia had a dispute over the use of a vacation day and Todoro put his finger in Raia's face and said "don't argue with me." Raia admits he was not worried that Todoro was going to strike him.

In April 2004, Raia, who had not objected to ITW's treatment of Garnier since in or about

March 2002,[2] again complained about ITW's treatment of Garnier and, for the first time, raised allegations that he, Raia, was being retaliated against.

On May 22, 2004 Raia filed a charge of discrimination against ITW with the Equal Employment Opportunity Commission ("EEOC") claiming he was retaliated against for engaging in protected activity. The EEOC dismissed the charges and issued a right to sue letter. Raia filed a lawsuit against ITW on August 17, 2004 alleging retaliation. *See Raia v. Illinois Tool Works*, Civil Action No. 04-3535 ("Raia I").

Plaintiff's employment terminated on April 8, 2005. According to Defendant, Plaintiff voluntarily resigned to take another position. According to Plaintiff, he was constructively discharged because the above described acts of retaliation rendered his working conditions intolerable. On August 1, 2006, Raia commenced this action in New York State Court seeking to recover for his alleged constructive discharge. Defendants then removed the action to this Court.

*Discussion*

**I. Summary Judgment Standard**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are

---

[2] After Garnier employment with ITW ended in December 2001, Plaintiff wrote two statements in support of Garnier. It is undisputed, however, that no one at ITW knew about these statements until they were disclosed in Garnier's lawsuit against ITW in early 2004. *Compare* ITW's Statement of Undisputed Facts at ¶¶ 13-14 *with* Plaintiff's Local Civil Rule Counterstatement at ¶¶ 13-14.

5

material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). "Rule 56(e)'s requirement the affiant have personal knowledge and be competent to testify to the matters asserted in the

affidavit also means that an affidavit's hearsay assertions that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). That being said, it is well-established that a non-movant cannot defeat summary judgment with nothing more than "unsupported assertions," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or

the allegations in its pleadings. *See Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also* Fed. R. Civ. P. 56(e). More particularly, although "summary judgment should be used sparingly" in cases where the material fact at issue is the defendant's intent or motivation, the plaintiff must nevertheless offer some "concrete evidence" in his favor, and is "not entitled to a trial simply because the determinative issue focuses upon the defendant's state of mind." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

## II. Constructive Discharge

As the Supreme Court has stated, constructive discharge represents a "'worse case' harassment scenario, harassment ratcheted up to the breaking point." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147-48 (2004). In this Circuit, "[a]n employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003) (and cases cited therein). Constructive discharge requires the employer's intentional conduct and an intolerable level of working conditions. *Petrosino v. Bell Atlantic*, 385 F.3d 210, 229 (2d Cir. 2004). "[W]hether the employer's deliberate actions rendered the employee's work conditions so intolerable as to compel resignation . . . is assessed objectively by reference to a reasonable person in the employee's position. *Id.* at 230.; *Terry v. Ashcroft*, 336 F.3d 128, 152 (2d Cir.2003). Certain conduct is insufficient to support a constructive discharge claim:

> [A] constructive discharge claim cannot be proved by demonstrating that an employee is dissatisfied with work assignments she receives within her job title, *see Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993), or even with the failure to receive an anticipated raise, *see Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993), or a bonus after having received one in previous years, *see Chisolm v. Kidder Peabody Asset Mgmt.*, 966 F. Supp. 218, 228-29 (S.D.N.Y. 1997), it is [therefore] doubtful that a constructive discharge claim can be established by an employee dissatisfied with reduced promotion opportunities, *see, e.g., Neal v. Honeywell, Inc.*, 942 F. Supp. 388, 395 (N.D. Ill. 1996) (rejecting constructive discharge claim by whistleblower dissatisfied with transfer offers because "they were not promotions").

*Petrosino*, 385 F.3d at 230. *See also Chertkova v. Conn. Gen'l Life Ins.* Co., 92 F.3d 81, 89 (2d Cir. 1996) ("disagreement with management over the quality of an employee's performance will not suffice to establish a constructive discharge"); *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360-61 (2d Cir. 1993) (constructive discharge cannot be established "simply through evidence that an employee was dissatisfied with the nature of his assignments" or because the "employee feels that the quality of his work has been unfairly criticized.") Plaintiff's constructive discharge claim, although brought pursuant to New York State law, is governed by the standard used in federal discrimination cases. *See Schiano v. Quality Payroll Sys.,* Inc., 445 F.3d 597, 609 (2d Cir. 2006); *Ferraro v. Kellwood Co.*, 440 F.3d 96, 99 (2d Cir. 2006) (holding standards for liability under New York State Human Rights Law are the same as those under the equivalent federal antidiscrimination law). *See also Morris v. Schroder Capital Mgmt. Int'l*, 7 N.Y.2d 616, 621-22 (2006) (applying constructive discharge test from federal employment discrimination law).[3]

---

[3] Because Raia's constructive discharge claim is based on New York Law and not Title VII, Defendant's argument that it should be dismissed for failure to exhaust administrative

Raia's constructive discharge claim is premised upon the retaliation to which he was allegedly subjected. Claims of retaliation pursuant to Title VII are analyzed according to the *McDonnell Douglas* burden-shifting framework. *See Terry v. Ashcroft*, 336 F.3d at 141. A *prima facie* claim of retaliation is established by "'evidence sufficient to permit the trier of fact to find that [1] [the plaintiff] engaged in protected [activity], [2] the employer was aware of this activity, [3] the employer took adverse action against the plaintiff, and [4] a causal connection exists between the protected activity and the adverse action . . . . *Id.* (quoting *Cifra v. G.E. Co.*, 252 F.2d 205, 216 (2d Cir. 2001). The adverse action requirement is satisfied by "action which might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, - - U.S. - -, 126 S. Ct. 2405, 2412-13 (2006). Thus, for purposes of Raia's retaliation claims, the question was whether the conduct ascribed to ITW by Raia following Raia's complaints of the employer's treatment of Garnier was sufficiently sever, objectively viewed, to deter employees lodging like complaints in similar situations.

In *Raia I*, this Court denied ITW's motion for summary judgment on Plaintiff's claims of retaliation, holding that Plaintiff had proffered sufficient evidence to establish a prima facie case of retaliation. *See Raia I*, Memorandum & Order dated February 23, 2006, *reported at* 2007 WL 608129. The Court shall not revisit its decision in *Raia I* and therefore for purposes of the instant action shall presume that the alleged incidents specified above constitute retaliation.[4] The

---

remedies in that Raia did not file a charge of discrimination with the EEOC is without merit.

[4] In *Raia I*, the Court also addressed and rejected Defendant's contentions that Plaintiff failed to establish a causal connection between the adverse action and the protected activity and that the retaliation claims should be dismissed because Raia failed to follow ITW's complaint

decision in *Raia I*, however, does not, as Plaintiff suggests, require denial of the instant motion. It is evident from the forgoing discussion that the standards for retaliation and constructive discharge are different. Because retaliation requires only action which might well dissuade a reasonable worker from making or supporting a charge of discrimination, conduct which supports a claim of retaliation will not necessarily support a claim of constructive discharge. *Cf. Petrosino,* 385 F.3d 210 (holding evidence sufficient to defeat summary judgment on hostile work environment claim but not sufficient to defeat summary judgment on constructive discharge claim); *Whidbee v. Garzarelli Food Specialties*, *Inc.*, 223 F.3d 62 (2d Cir. 2000) (same). Where, as here, the constructive discharge claim is based on retaliatory conduct, the plaintiff must establish retaliation "ratcheted up to the breaking point."

With these precepts in mind, the Court concludes that the alleged incidents of retaliation are insufficient as a matter of law to allow a rational trier of fact to conclude that a reasonable person in Raia's position would have felt compelled to resign. For the reasons set forth in Raia I, a jury could conclude that Plaintiff was subjected to retaliation for engaging in protected activity. However, all but two of the alleged retaliatory actions took place before Raia's April 2004 complaints about ITW's treatment of Garnier and the alleged retaliation directed at Raia himself. Indeed, the more egregious retaliatory conduct is alleged to have occurred in 2002 and 2003. Raia does not suggest that this pre-April 2004 conduct compelled his resignation. Thus, the Court must consider whether a reasonable jury could find that the post-April 2004 conduct "ratcheted" the retaliation up to the "breaking point." *See Petrosino*, 385 F.3d at 230. No rational trier of fact could so conclude.

---

procedure.

Raia does not allege any retaliatory action between December 2003 and September 2004. Between September 2004 and his resignation in April 2005, the only two retaliatory incidents alleged are Todoro's refusal to investigate the vandalization of the truck Raia had used and to conduct an inventory of the truck,[5] and Todoro telling Raia "don't argue with me."[6] Both these event occurred towards the end of 2004. These two events, either singularly or collectively, cannot suffice for a jury to find that retaliation was dramatically increased to the breaking point. *See Spence*, 995 F.2d at 1157 (finding that after uneventful six month period, conduct consisting of ridicule of plaintiff's suggestions, decision of supervisor to drive with someone other than plaintiff and commencement of personnel survey without normal notice to plaintiff insufficient to support constructive discharge claim). *See also Petrosino*, 385 F.3d at 230.

In sum, resolving all factual ambiguities and drawing all inferences in favor of Plaintiff, the Court concludes that a rational trier of fact could not conclude that the alleged retaliation created an atmosphere so intolerable that he was forced to quit involuntarily,

### *Conclusion*

Defendant's motion for summary is granted. The Clerk of Court is directed to close this case.

Dated: Central Islip, New York
December 21, 2007

/s/
Denis R. Hurley
Senior District Judge

---

[5] Raia does not contend that the "vandalization" itself was an act of retaliation.

[6] Although the record is unclear when in 2004 this incident occurred, the Court shall presume, for purposes of this motion, that it took place after April 2004.

12